PER CURIAM.
The appellant appeals from a conviction under the Youthful Offender Act. She was indicted on the underlying charge of theft by fraudulent leasing or rental of a bracelet, in violation of § 13A-8-140, Code of Alabama 1975. The appellant received a three-year sentence and was placed on unsupervised probation for the length of the sentence. She raises four issues on appeal.
I
The appellant first contends that the State failed to prove a prima facie case. The record reveals that the appellant initially leased a wedding ring from Color Vision Home Rental Center on December 9, 1989. She signed a lease agreement. Several hours later, she returned the wedding ring and leased a gold bracelet at a comparable price. She executed a modification of her original agreement. By this time, she had three items that she had leased from Color Vision.
Apparently, the appellant failed to make payments between January 20 and March 5, 1990. The store manager told her that she could return the items and that he would hold them for her so she could re-rent them. He and the appellant discussed her failure to make payments on several occasions. On February 3, 1990, the store manager hand-delivered a letter to the appellant, instructing her to make the payments or to return the leased items. The appellant returned one of the leased items and told the store manager that the bracelet and a ring she had leased had been stolen. She returned the ring a few days later. She then told the store manager that the bracelet was in the possession of a drug dealer. She then signed another rental agreement for the bracelet, in which the store manager apparently refigured the amount owed because she was behind on her payments. The appellant made only two more payments. The store manager spoke to the appellant several times about honoring the lease agreement. He then mailed a certified letter to the appellant advising her either to return the bracelet or to pay in full. The letter was addressed to the address that the appellant had indicated on the contracts. The letter was returned “addressee unknown.”
The appellant subsequently told Detective Hobart Von Valkenburg of the Valley Police Department that “some girl in Lafayette” had the bracelet. (R. 67.)
This case was tried without a jury. The trial judge found that the appellant’s story that the bracelet had been stolen was not credible. He found that the State had proved the elements of the charged offense beyond a reasonable doubt and found the appellant guilty.
“The crime of theft by fraudulent leasing or rental of property is committed if a person, herein called ‘lessee,’ signs a written lease or rental contract with a person licensed to rent or lease tangible personal property under the provisions of article 4, chapter 12, Title 40, herein called ‘lessor,’ and obtains or exerts control over tangible personal property by reason of such rental contract, with the intent, knowledge or expectation that he will not perform the terms, covenants and agreements of the lessee provided in such rental contract.”
Ala.Code § 13A-8-140 (1975). In cases that challenge the sufficiency of the evidence, this court is required to view the evidence in the light most favorable to the prosecution, and we will not substitute our judgment for that of the trier of fact. Brandon v. State, 542 So.2d 1316 (Ala.Crim.App.1989). A verdict rendered on conflicting evidence will not be reversed on appeal. Ogle v. State, 548 So.2d 499 (Ala.Crim.App.1988). The record reveals that *808 the State proved all of the elements of the offense. The appellant’s contention that the State failed to prove a prima facie case because she did not have control over the bracelet at the time she signed the third agreement has no merit. The record reveals that she obtained the bracelet pursuant to the lease agreement. Furthermore, the trial judge found that her story concerning the bracelet was not credible. Thus, she continued to exert control over the bracelet even when she executed the third agreement.
II
The appellant next contends that her conviction is due to be reversed because the record indicates that her case was dismissed and that no action was taken to reinstate the case. This argument has no merit.
The record' reveals that early in the trial, the trial judge stated that the case was dismissed. The record also reflects, however, that the judge then allowed the State to argue against a dismissal. After asking the witness some questions, the trial judge stated that he wanted to go ahead and hear the rest of the evidence in the case. The judge then allowed the State’s witness to continue with his testimony. It is clear from the record that the trial judge did not intend to dismiss the case and that the case was never actually dismissed.
III
The appellant next contends that she did not receive adequate notice that she was to return the leased property. She apparently argues that § 13A-8-142 provides for a mandatory notice requirement. We disagree.
The elements of the offense are set out in § 13A-8-140. Several methods for proving a prima facie case are set out in § 13A-8-141. These are not the exclusive methods for proving a prima facie case. Section 13A-8-142 provides that, for purposes of § 13A-8-141, a written demand for the return of the leased property may be made by personally delivering a copy of the demand on the lessee or by sending the demand notice by certified mail to the address provided by the lessee on the lease agreement. There is nothing m the fraudulent leasing statute that requires these written notices unless the State is using a method of proof set out in § 13A-8-141(l) or (2).
Even if a written notice was required in every case, the store manager sent a notice by certified mail to the appellant at the address shown on the rental agreement. The address was apparently incorrect because the letter was returned “addressee unknown.” The appellant cannot now benefit from the failure to receive written notice when she supplied a false address. If this court were to interpret § 13A-8-142 as requiring the actual delivery of the demand letter, even where the lessee's address as shown on the lease is incorrect, then a person who supplies a false address will be assured that he will never receive notice by certified mail.
IV
The appellant next contends that the lease agreement was actually a sales contract and, thus, her conviction is due to be reversed. We note that “written lease or rental contract” is not defined by the statute.
An examination of the lease agreement reveals that Color Vision was responsible for maintaining the leased property. The lessee could terminate the lease at any time and the lessor would then pick up the leased property. The lease agreement also provides that if the lessee wished to purchase the property after a certain period of time, the lessee could pay cash or execute a promissory note. This would effectively terminate the lease agreement. Thus, we find that the agreement signed by the appellant was a “written lease or rental contract” within the meaning of § 13A-8-140.
For the reasons set forth above, the judgment in this case is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.